**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**HARRISBURG DIVISION**

**CASE NO.:  1:19-cv-01638-YK**

ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

       Plaintiff,

v.

KARNS PRIME AND FANCY FOOD LTD.
AND AD POST GRAPHICS MEDIA
MARKETING, INC.,

       Defendants.

---

## DECLARATION OF DOUGLAS FLEURANT

I, Douglas Fleurant, declare and say:

1.     I am the Executive Vice President and Chief Financial Officer of Plaintiff Adlife Marketing & Communications Co., Inc. (Adlife). I make this declaration based upon my personal knowledge in support of Adlife's Motion for Reconsideration of this Court's Order (Doc. No. 60) and Memorandum (Doc. No. 59) granting defendant's motion to dismiss for failure to prosecute (Doc. No. 36) and dismissing Adlife's complaint with prejudice. If called upon to testify about the matters set forth herein my testimony will be substantially as follows.

2.     I earned a Bachelor's Degree from Bryant University in 1982.  I was employed as comptroller for Lady Carol, Inc., a costume Jewelry Manufacturer, for over twelve years. Thereafter, I was president of Auto Salvage Technologies, Inc., an Auto Salvage and Wrecking operation for over fourteen years. Since 2014, I have been employed by Adlife as EVP/CFO.

3.       As EVP/CFO of Adlife, besides the care, custody and control of all the financial and accounting activities, I also monitor the progress and discussions related to all the open infringement cases Adlife has filed.  I am tasked with the final review of any agreements before they are executed and am responsible with making sure all settlement payments are received and recorded properly in our company's books and records. I report directly to Joel Albrizio, the Chief Executive Officer of Adlife. Ms. Rebecca Jones, Adlife's intellectual property manager, a trained paralegal, reports directly to me.

4.       Adlife has been the victim of rampant infringement online. The unauthorized copying, display and distribution of Adlife's images has grown exponentially since most businesses moved their advertising and marketing online. As a result, Adlife has been forced to significantly increase its oversight of unauthorized uses of its images in order to maintain the value of Adlife's intellectual property portfolio and discourage the unauthorized uses that have proliferated. Adlife also engaged the services of outside attorneys, including Mr. Liebowitz and LLF.

5.       Adlife's business employs thirty people. Fifteen are graphic artists who create print and digital advertisements for our clients. We employ four sales and customer support representatives, four intellectual property specialists, a social media specialist, three administrative and production support staff, and three officers including me. In previous years we employed over 50 people focused solely on the creation and distribution of printed grocery retail circulars, in-store signage and social media services, but recent years have seen a decline in these areas of our business. The creation of weekly circulars and in-store signage were responsible for most of Adlife's revenues in the past, but over the last four years, as that revenue began to decline, Adlife began offering digital advertising services to its clients, mainly in the

form of email marketing.  Presently Adlife has approximately 40 wholesale and retail clients of our advertising services. Prior to 2016, 95% of Adlife's total revenue was generated by the creation and distribution of printed circulars and in-store signage.

6.       As EVP/CFO, part of my job included reviewing settlement proposals and agreements provided by LLF to Adlife on Adlife's cases. It was also my job as EVP/CFO to maintain the books and records of Adlife concerning settlements in Adlife cases. Adlife relied on LLF for updates on our cases and we did not receive them from Pacer or any service that relied on information on Pacer. Adlife relies on its counsel to provide updates on cases, including filing status, upcoming deadlines, pending motions and decisions, and requests for discovery for which Adlife's participation and assistance is required.  Adlife relied upon its attorneys' professional responsibility and duty of candor to keep Adlife truthfully informed of the progress of its cases on an ongoing basis.  I never obtained information or documents from Pacer directly because until November of 2020, I never had any reason to believe that any of Adlife's counsel, including Mr. Liebowitz, had failed to comply with their professional responsibilities to candidly and honestly keep Adlife informed of the progress of Adlife's cases.

7.       Mr. Liebowitz and LLF represented Adlife in copyright infringement litigation for approximately three years prior to November of 2020. While LLF represented Adlife, Mr. Leibowitz was required by Adlife to attend a regular weekly meeting with Adlife's Intellectual Property manager Rebecca Jones during which Mr. Leibowitz was required to provide Ms. Jones with updates on the progress of our cases. Ms. Jones then provided status update emails to me and the President Joel Albrizio.

8.       I was never aware that Mr. Liebowitz and LLF failed to produce documents or discovery in this case. LLF had access to all relevant documents regarding the images and

3

copyrights in the lawsuit. LLF had access to our subscription fees and terms of use. Adlife had

no knowledge or reason to suspect that these documents had not been produced.

9.      In preparation for making this declaration I read this Court's Memorandum dated

February 23, 2021 filed at Doc. No. 59. This Court's Memorandum recited certain matters as fact

that are, in truth, not accurate. These matters concern Adlife's awareness of the progress of the

litigation in this case, Adlife's participation in the discovery process with its attorneys Richard

Liebowitz and James Freeman, the progress of Adlife's litigation in other cases, the actions of

Adlife's former counsel Richard Liebowitz and James Freeman taken on behalf of Adlife, the

actions of Mr. Liebowitz taken on behalf of his other clients, and the sanctions levied against Mr.

Liebowitz by federal courts around the country.

10.      In particular, the Court in its Memorandum discusses the decision of the Northern

District of New York in *Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC,* No. 5:19-CV-

0796, 2020 WL 4795287 (N.D.N.Y. Aug. 18, 2020), and at page 9 of Doc. 59 this Court quotes

footnote 10 on page 10 of the *Buckingham Bros.* decision wherein the court in that case faulted

Adlife for continuing to use Mr. Liebowitz "who has little respect or knowledge of local

procedures, violates court orders, lies under oath, and is continuously sanctioned for frivolous

lawsuits." This Court went on in its Memorandum on page 9 to conclude that "even if the Court

were to accept that Plaintiff had no knowledge of the numerous dismissals of its own cases

brought by Mr. Liebowitz or sanctions levied against him prior to his conduct in this case, at a

minimum Plaintiff must have become aware of its counsel's egregious history of misconduct

after being served with the sanction Opinion and Order of June 26, 2020 from the Southern

District of New York," which appears to be a reference to the decision in *Usherson v. Bandshell

Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020), in which

Mr. Liebowitz was sanctioned, and ordered to serve a copy of that order, either by email or by overnight courier, on every one of his firm's current clients, including Adlife. **Mr. Liebowitz never served that decision on me or any of my colleagues at Adlife.**

### *Usherson v. Bandshell Artist Mgmt*

11.      I have reviewed the July 27, 2020 declaration filed by Richard Liebowitz in the *Usherson* case in which certifies under penalty of perjury that on July 27, 2020 Mr. Liebowitz served a copy of the order in *Usherson* on "every one of LLF's clients." A copy of that declaration is attached hereto as Exhibit 1.

**12.**      I have carefully and diligently reviewed and searched my email for the period from June 26, 2020 to the present. **I never received an email from Mr. Liebowitz on July 27, 2020 or any other date serving me with the decision in *Usherson*.** In fact, while the *Usherson* decision is mentioned several times in the *Buckingham Bros.* decision, I did not have a copy of the *Usherson* decision in my possession at the time I read the *Buckingham Bros.* decision, and I did not know anything about what happened in *Usherson* until after this court dismissed this case.

### *Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC*

13.      Mr. Liebowitz never informed me about any problems in the *Buckingham Bros.* case. while it was pending. I first learned about the *Buckingham Bros.* decision not from Mr. Liebowitz, but from Mr. Albrizio. I did not correspond with Mr. Liebowitz directly about *Buckingham Bros.* All communications with Mr. Liebowitz about *Buckingham Bros.* went through Ms. Jones and Mr. Albrizio. I did not read the *Buckingham Bros.* decision until Ms. Jones sent it to me on November 16, 2020. Attached hereto as Exhibit 2 is a true and correct copy of my response to the email I received from Ms. Jones enclosing the decision in *Buckingham Bros.* My immediate reaction in response to Ms. Jones in my reply to her at 3:45 pm

that day is "OMG. Has Joel [Albrizio, CEO of Adlife] read this?" To which Ms. Jones answers

"I don't think so. I was afraid to send it Friday.  I finally read the whole thing through.  I had to

keep taking breaks on Friday because I knew it was bad, but I wanted to find out about all of the

other cases also.  It's just awful.  Did you read the footnotes also?  The Judge lumps Adlife in

with Liebowitz.  We need to distance ourselves from him." In response I agreed to share it with

Mr. Albrizio immediately. By that time, I had obviously forgotten about my limited interaction

with Mr. Albrizio back in August about the *Buckingham Bros.* decision.

### Discovery in *Adlife v. Karns*

14.     This case was filed on September 23, 2019. Before this case was filed, on

September 20, 2019, Ms. Jones sent the email attached as Exhibit 3 to Mr. Liebowitz and copied

me and Mr. Albrizio on it, which was her usual practice. Attached to the email was a PDF

document listing the **thirty-six (36) Adlife copyrighted images** that Adlife contended were

infringed by Karns a total of **eighty-nine (89) times**. The PDF showed each image, the image

name, the copyright registration number, the registration date, the creation date, the publication

date, the number of times the image was infringed, and the earliest documented infringement

date. The email also contained a link to a shared folder where all the documents supporting

Adlife's claims could be found including all the copyright registration certificates, the images

infringed, and the infringements discovered.

15.     Mr. Liebowitz never provided me or anyone else at Adlife with the complaint to

review in this case prior to filing. Adlife trusted Mr. Liebowitz to accurately and completely

allege Adlife's infringement claim.

16.     On February 3, 2020, Ms. Jones copied me on an email responding to Mr.

Liebowitz's request: "Karns would like a spreadsheet of the 22 different copyright registrations

and the effective date of each registration. Can you kindly put this together? Thank you so

much!" I received Ms. Jones' email and noted that she promptly provided him with the
spreadsheet Mr. Liebowitz requested. A true and correct copy of the email correspondence with
Mr. Liebowitz on this issue with privileged communications redacted is attached hereto as
Exhibit 4. In response, Mr. Liebowitz acknowledged receipt by reply to all.

17.     On February 26, 2020, Mr. Albrizio copied me on an email responding to an
inquiry from Mr. Liebowitz about the number of images at issue in this case. Mr. Albrizio's
response stated "We already have 59 images. That's a lot of images." A true and correct copy of
the email correspondence with Mr. Liebowitz on this issue with privileged communications
redacted is attached hereto as Exhibit 5.

18.     On April 13, 2020, Mr. Freeman of LLF sent an email to Ms. Jones and copied
me, Mr. Albrizio and Mr. Liebowitz, that attached a second set of discovery requests served by
Karns on Adlife on March 13, 2020. Mr. Freeman asked if Ms. Jones could have a telephone call
with him. A calendar invitation was sent for that afternoon to everyone on the email including
me and Mr. Liebowitz. The calendar invite is attached hereto as Exhibit 6. The call was held that
afternoon, I did not attend, but was informed that we provided Mr. Freeman with all the
information he requested to respond to the discovery requests from Karns.

19.     I saw no further updates or requests for discovery in this case until Monday,
August 3, 2020 when Mr. Liebowitz sent an email to Ms. Jones that said "Can you kindly gather
all the copyright registrations for the Karn's case. See attached Exhibit A. We need to produce
this Tuesday." I recall Ms. Jones being very frustrated with Mr. Liebowitz since the next day was
the deadline. Ms. Jones repeatedly told Mr. Liebowitz not to wait until the last minute, but his
persistent procrastination frustrated Ms. Jones. Ms. Jones drafted an email to Mr. Liebowitz
expressing her frustration and sent it to me to review and approve before she sent it. I approved it

7

and Ms. Jones sent it. Attached hereto as Exhibit 7 is the email exchange between me, Ms. Jones

and Mr. Liebowitz. Despite the short notice, Ms. Jones immediately dropped what she was doing

and resent Mr. Liebowitz and Mr. Freeman the link to Adlife's shared folder containing all the

copyright registration certificates for images infringed by Karns. In response, Mr. Liebowitz

acknowledged receipt.

20.     I was never told by Mr. Liebowitz or anyone else at LLF that Adlife failed to

produce discovery in this case. I have searched my email and found no such notification from

Mr. Liebowitz or anyone else at LLF that Adlife failed to produce discovery to Karns. Mr.

Liebowitz and LLF had all Adlife's documents concerning the images at issue in this case and

Adlife's copyright registrations before this case was filed. Mr. Liebowitz and LLF had all the

information and documents concerning Adlife's subscription fees and terms of service at the

latest on February 25, 2020 when Ms. Jones sent Mr. Freeman Adlife's Terms of Use. Whenever

Mr. Liebowitz or Mr. Freeman requested documents or information from Adlife we provided

whatever we possessed immediately. If anyone at LLF had requested more or different

information or documents from us we would have provided those immediately. I never had any

reason to believe that Mr. Liebowitz, Mr. Freeman, or LLF were not managing the case or the

discovery, until November 13, 2020.

21.     The very first time I was informed anything approaching the true facts concerning

what transpired in this case by Mr. Leibowitz was on November 15, 2020 in the email attached

hereto as Exhibit 8 that Mr. Liebowitz sent to Joel Albrizio with a copy to me and Rebecca

Jones. The email states:

> Hi Joel,
> On the case against Karns, months ago they did a SJ on the issue
> that we did not provide proof of actual damages, but we are going
> for statutory damages, so you do not need to prove actual damages

for a statutory damages case. So their motion will likely not
succeed and even if it does you still have the $750-$150,000 for
statutory for willful infringement. Our response was put on pause,
as I needed to get a local lawyer in Harrisburg which took some
time to get. The judge did not set a time limit on when to get a
local lawyer in Harrisburg. I thought the parties would do a
meditation before having to get a local lawyer in Harrisburg, PA.
Instead of trying to in good faith do a mediation they did a motion
for lack of prosecution, which has almost no shot of winning as the
court never set a time limit to get a local lawyer. In any event, I got
a local lawyer late last week to come in and we responded to them
and told the judge to require the other side to participate in a
mediation. The judge is likely going to set a status conference in
the upcoming few weeks to talk about mediation and to talk about
new discovery deadlines. Karns never produced any documents in
the case so we have a strong argument that they have not engaged
in good faith. The case is taking its course. Let me know if you
want to jump on the phone to discuss more.
Thank you.

Best,
Richard Liebowitz
Liebowitz Law Firm, PLLC
516-233-1660
www.LiebowitzLawFirm.com

22.    The email above was my first notice from anyone at LLF that: a) a motion for

lack of prosecution was filed in this case; b) that discovery deadlines had not been complied with

in this case, or c) that a motion for summary judgment was filed in this case.

23.    In the Court's decision at page 9 of Doc. 59 the Court states that Adlife "must

have become aware of its counsel's egregious history of his conduct after being served with the

sanction Opinion and Order of June 26, 2020 from the Southern District of New York**." I never**

**received that decision.** I searched my email, and it is not there. I was not aware of the history of

Mr. Liebowitz's egregious conduct until Ms. Jones did her own research on Mr. Liebowitz in

November of 2020.

24.    The Court's February 23, 2021 Memorandum references several other Adlife

cases that were also mentioned in footnote 10 of the *Buckingham Bros*. decision.  I know that

*Adlife Mktg. & Communications Co., Inc. v. Yoder's Meats, Inc*., No. 20-CV-1313 (E.D. Pa. June 9, 2020) was settled in June of 2020. I know that *Adlife v. Musser's*, No. 1:19-cv-1828, was settled in July of 2020. *Adlife Mktg. & Communications Co., Inc. v. Tops Markets, LLC*, No. 18-CV-1102 (N.D.N.Y.) was settled in March of 2019 when a marketing company knows as Pure Red came forward, indicated that it was the source of the images used by Tops Markets and several other grocery chains, took responsibility for the infringement, and promptly settled with Adlife on behalf of Top's Market and other infringers. *Adlife Mktg. & Communications Co., Inc. v. Wal-Mart.com USA, LLC*, No. 18-CV-3175[1], District of Colorado, was settled in March of 2019. According to what Mr. Liebowitz told Adlife, *Adlife Mktg. & Communications Co., Inc. v. Acme Markets, Inc*., No. 19-CV-7394 (S.D.N.Y.) was dismissed because Mr. Liebowitz sued the wrong "Acme Markets."

25.    Adlife terminated LLF and Mr. Liebowitz in November of 2020 from all Adlife's cases including *Adlife v. AD Post Graphics Media Marketing, Inc*., No. 1:19-cv-1701, and if Mr. Leibowitz has not withdrawn, he failed to comply with Adlife's termination demand. Our new counsel, SRIPLAW, took over the case, and filed their appearance on December 3, 2020. An Amended Complaint was filed on our behalf by SRIPLAW on February 22, 2021.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 11, 2021 at Mashpee, MA.


_Douglas Fleurant (VP/CFO_
Douglas Fleurant

---

[1] The decision in Buckingham Bros. contains a typographical error. The correct case number for *Adlife Mktg. & Communications Co., Inc. v. Wal-Mart.com USA, LLC*, is No. 1**8**-CV-3175.