UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

CASE NO.: 1:19-cv-01638-YK

ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

       Plaintiff,

v.

KARNS PRIME AND FANCY FOOD LTD.
AND AD POST GRAPHICS MEDIA
MARKETING, INC.,

       Defendants.

## DECLARATION OF REBECCA M. JONES

I, Rebecca M. Jones, declare and say:

1. I am the Intellectual Property Manager for Plaintiff Adlife Marketing & Communications Co., Inc. (Adlife). I make this declaration based upon my personal knowledge in support of Adlife's Motion for Reconsideration of this Court's Order (Doc. No. 60) and Memorandum (Doc. No. 59) granting defendant's motion to dismiss for failure to prosecute (Doc. No. 36) and dismissing Adlife's complaint with prejudice. If called upon to testify about the matters set forth herein my testimony will be substantially as follows.

2. I earned a bachelor of science degree from Roger Williams University in Paralegal Studies in 2020. I have been employed by Adlife as a paralegal since 2016. I have been a member of the Rhode Island Paralegal Association and the National Federation of Paralegal Associations.

3. As Intellectual Property Manager, I oversee Adlife's intellectual property portfolio including its extensive portfolio of images used in the marketing and advertising of

fresh and prepared food by groceries, supermarkets, food wholesalers, restaurants, specialty grocers, and many other food and food service businesses. As IP manager I was also the primary point of contact for our former attorney Richard Liebowitz, and Liebowitz Law Firm (LLF) personnel, on all Adlife copyright infringement matters. I report directly to Douglas Fleurant, the Chief Financial Officer and Executive Vice-President of Adlife, and also to Joel Albrizio, the President and Chief Executive Officer of Adlife.

4.  Adlife has been the victim of rampant infringements online. The unauthorized copying, display and distribution of Adlife's images has grown exponentially since most businesses moved their advertising and marketing online. As a result, Adlife has been forced to significantly increase its oversight of unauthorized uses of its images in order to maintain the value of Adlife's intellectual property portfolio and discourage the unauthorized uses that have proliferated. Adlife also engaged the services of outside attorneys, including Mr. Liebowitz and LLF.

5.  As IP manager it was my job to solicit and obtain reports from LLF on Adlife's cases. Adlife relied on LLF for updates on our cases and did not receive them from Pacer or any service that relied on information on Pacer. Adlife relies on its counsel to provide updates on cases, including filing status, upcoming deadlines, pending motions and decisions, and requests for discovery for which Adlife's participation and assistance is required.  Adlife relied upon its attorneys' professional responsibility and duty of candor to keep Adlife truthfully informed of the progress of its cases on an ongoing basis.  I never obtained information or documents from Pacer directly because until November of 2020, I never had any reason to believe that any of Adlife's counsel, including Mr. Liebowitz, had failed to comply with their professional responsibilities to candidly and honestly keep Adlife informed of the progress of Adlife's cases.

6.       Mr. Liebowitz and LLF represented Adlife in copyright infringement litigation for approximately three years prior to November of 2020. While LLF represented Adlife, Mr. Leibowitz attended a regular weekly meeting with me during which Mr. Leibowitz would give me updates on the progress of our cases. I took notes during these meetings. Until November of 2020, Mr. Leibowitz never reported any problems with any of Adlife's cases to me. I personally received reports on our active cases from LLF in regular weekly meeting with Mr. Leibowitz that were scheduled for each Wednesday at 4:30 p.m.

7.       Attached hereto as Exhibit 1 are my status reports from my weekly meetings with Mr. Leibowitz from April 22, 2020 until my last meeting with Mr. Liebowitz on November 7, 2020.[1] Mr. Liebowitz attended these calls regularly, providing what I believed to be forthright updates regarding each case status, including multiple "No Update" reports from Mr. Liebowitz. My status reports have been redacted to remove privileged information about matters unrelated to this case, but I left unredacted the status updates I received for this case and the case of *Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC,* No. 5:19-CV-0796, pending in the Northern District of New York.

8.       I sent my status update reports by email to Messrs. Albrizio and Fleurant, and also to Mr. Liebowitz. On several occasions, Mr. Liebowitz responded to my emails thanking me for the report, but he never made any changes, updates or clarifications to any of the status reports I sent him.

9.       In addition to my status reports, during all my weekly calls with Mr. Liebowitz I kept notes and made entries into a spreadsheet that kept a dated log of the updates provided by Mr. Liebowitz. I maintained this spreadsheet in a shared Google drive location so that Messrs.

---

[1] Adlife is willing to provide the Court with my unredacted weekly status updates for *in camera* review upon request.

3

Albrizio, Fleurant and Liebowitz could also refer to it when necessary. Attached hereto as Exhibit 2 is a true and correct copy of my log entries for this case and the *Buckingham Bros.* case.

**10.     Until the events discussed below in November 2020 that led to his termination as counsel for Adlife, I had no knowledge whatsoever that Mr. Liebowitz and LLF had ever been sanctioned or disciplined by this court or other courts. During the nearly three (3) years we worked with LLF, LLF never notified me directly of any procedural or substantive problems that would call into question LLF's or Mr. Liebowitz's handling of Adlife's cases.**

11.     In preparation for making this declaration I read this Court's Memorandum dated February 23, 2021 filed at Doc. No. 59. This Court's Memorandum recited certain matters as fact that are, in truth, not accurate. These matters concern Adlife's awareness of the progress of the litigation in this case, Adlife's participation in the discovery process with its attorneys Richard Liebowitz and James Freeman, the progress of Adlife's litigation in other cases, the actions of Adlife's former counsel Richard Liebowitz and James Freeman taken on behalf of Adlife, the actions of Mr. Liebowitz taken on behalf of his other clients, and the sanctions levied against Mr. Liebowitz by federal courts around the country.

12.     In particular, the Court in its Memorandum discusses the decision of the Northern District of New York in *Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC,* No. 5:19-CV-0796, 2020 WL 4795287 (N.D.N.Y. Aug. 18, 2020), and at page 9 of Doc. 59 this Court quotes footnote 10 on page 10 of the *Buckingham Bros.* decision wherein the court in that case faulted Adlife for continuing to use Mr. Liebowitz "who has little respect or knowledge of local procedures, violates court orders, lies under oath, and is continuously sanctioned for frivolous

4

lawsuits." This Court went on in its Memorandum on page 9 to conclude that "even if the Court were to accept that Plaintiff had no knowledge of the numerous dismissals of its own cases brought by Mr. Liebowitz or sanctions levied against him prior to his conduct in this case, at a minimum Plaintiff must have become aware of its counsel's egregious history of misconduct after being served with the sanction Opinion and Order of June 26, 2020 from the Southern District of New York," which appears to be a reference to the decision in *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020), in which Mr. Liebowitz was sanctioned, and ordered to serve a copy of that order, either by email or by overnight courier, on every one of his firm's current clients, including Adlife.

### *Usherson v. Bandshell Artist Mgmt*

13. I have reviewed the July 27, 2020 declaration filed by Richard Liebowitz in the *Usherson* case which certifies under penalty of perjury that on July 27, 2020 Mr. Liebowitz served a copy of the order in *Usherson* on "every one of LLF's clients." A copy of that declaration is attached hereto as Exhibit 3.

14. I have carefully and diligently reviewed and searched my email for the period from June 26, 2020 to the present. **I never received an email from Mr. Liebowitz on July 27, 2020 or any other date serving me with the decision in *Usherson*.** In fact, I did not find out about the decision in *Usherson* until November of 2020, and when I learned about it in November of 2020 it was a result of my own research.

### *Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC*

15. Mr. Liebowitz never informed me about any problems in the *Buckingham Bros.* case. Rather, during my weekly status update calls with Mr. Liebowitz, he simply told me that the case was in default. My status update report emails show that the *Buckingham Bros.* case is in a default status until the report dated August 21, 2020. In that report I noted that Mr.

5

Liebowitz told me: "Buckingham Market: Richard requested $30K in Default. Judge questioned that amount (1 image). Richard will write to the Judge and reduce request to $10K."

16. I did not read the *Buckingham Bros.* decision until I researched and found it online on November 16, 2020.[2] Attached hereto as Exhibit 4 is a true and correct copy of my email to Mr. Fleurant enclosing the decision. In my email I advise Mr. Fleurant "This is the Buckingham Market Decision. It's eye-opening to read, and seems to be detrimental to Adlife because we're associated with Liebowitz." Mr. Liebowitz and LLF were terminated as Adlife's counsel thereafter.

### Discovery in *Adlife v. Karns*

17. This case was filed on September 23, 2019. Before this case was filed, on September 20, 2019, I sent the email attached as Exhibit 5 to Mr. Liebowitz. Attached to the email was a PDF document listing the **thirty-six (36) Adlife copyrighted images** that Adlife contended were infringed by Karns a total of **eighty-nine (89) times**. The PDF showed each image, the image name, the copyright registration number, the registration date, the creation date, the publication date, the number of times the image was infringed, and the earliest documented infringement date. My email also contained a link to a shared folder where all the documents supporting Adlife's claims could be found including all the copyright registration certificates, the images infringed, and the infringements discovered.

18. Mr. Liebowitz never provided me with the complaint to review in this case prior to filing. Mr. Liebowitz never provided Adlife with complaints to review, and Adlife trusted Mr. Liebowitz to accurately and completely allege Adlife's infringement claim.

---

[2] I have since learned that Mr. Albrizio found out about the decision in *Buckingham Bros.* from one of Adlife's other attorneys on August 22, 2020. However, Mr. Albrizio did not tell me about the decision at that time or at any time before I discovered it in my own research.

6

19.     On February 3, 2020, Mr. Liebowitz sent me an email asking "Karns would like a spreadsheet of the 22 different copyright registrations and the effective date of each registration. Can you kindly put this together? Thank you so much!" I immediately responded to Mr. Liebowitz that day and provided him with the spreadsheet he requested. A true and correct copy of my email correspondence with Mr. Liebowitz on this issue with privileged communications redacted is attached hereto as Exhibit 6. In response, Mr. Liebowitz acknowledged receipt.

20.     On February 21, 2020, Mr. Liebowitz sent me the email attached as Exhibit 7 with written discovery requests served on Adlife by Karns on December 23, 2019. February 21, 2020 was the first date I received these requests that were, by that date, almost 60 days old. I reviewed the requests and on February 25, 2020, I discussed them with James Freeman, an attorney for LLF. During our conversation, I advised Mr. Freeman that all the documents responsive to Karns' discovery requests had previously been provided to Mr. Liebowitz before the case was filed, and that if Mr. Freeman checked his files he would find Adlife's documents in LLF's files. I followed up our call with an email to Mr. Freeman and Mr. Liebowitz that attached the Terms of Use document applicable to the images at issue in this case which was also an item of discovery Mr. Freeman requested. Attached hereto as Exhibit 8 is a true and correct copy of my email to Messrs. Freeman and Liebowitz dated February 25, 2020. In response, Mr. Freeman acknowledged receipt.

21.     On February 26, 2020, Mr. Liebowitz sent an email to me and Messrs. Fleurant and Albrizio concerning this case. In the exchange of emails that followed, Mr. Liebowitz asked "Can we get a total count to date of the number of photos used by Karns?" Mr. Albrizio responded the same day that "We already have 59 images. That's a lot of images." A true and

7

correct copy of the email correspondence with Mr. Liebowitz on this issue with privileged communications redacted is attached hereto as Exhibit 9.

22. On April 13, 2020, Mr. Freeman of LLF sent an email to me that copied Mr. Liebowitz and attached a second set of discovery requests served by Karns on Adlife on March 13, 2020. Mr. Freeman asked if I could have a telephone call with him and I agreed. A calendar invitation was sent for that afternoon to everyone on the email including Mr. Liebowitz. The email and calendar invite are attached hereto as Exhibit 10. The call was held that afternoon and we provided Mr. Freeman with all the information he requested to respond to the discovery requests from Karns. The next day, April 14, 2020, Donna Halprin, an employee of LLF, sent Mr. Albrizio interrogatory answers to sign by HelloSign. Attached hereto as Exhibit 11 are the interrogatory answers electronically signed by Mr. Albrizio.

23. I received no further updates or requests for discovery in this case after the April 14th request for interrogatory answers until Monday, August 3, 2020 when Mr. Liebowitz sent me an email that said "Can you kindly gather all the copyright registrations for the Karn's case. See attached Exhibit A. We need to produce this Tuesday." I was very frustrated with this request since the next day was the deadline and Mr. Liebowitz was provided by me with the documents he now requested back before this case was filed.[3] Attached hereto as Exhibit 12 is the email from Mr. Liebowitz and my response. Despite the short notice, I immediately dropped

---

[3] My response to Mr. Liebowitz stated:

> We have a weekly call specifically so we can stay on top of the cases, and for example, avoid last minute requests for Discovery. Unfortunately, that has not proven to be true. Discovery requests are received by your office 30 days before they are due, however Adlife typically does not receive notice of them until two days before they are due. This practice cannot continue.
>
> Please understand, each of us on this team has a daily workload to manage, and additional requests such as these can be managed more easily when there is more time to complete them. When I am given a minimal window of time, other important tasks must be pushed aside.

8

what I was doing and resent Mr. Liebowitz and Mr. Freeman the link to the shared folder containing all the copyright registration certificates for images infringed by Karns. Attached hereto as Exhibit 13 is my email of August 3, 2020 with the link to the shared folder. In response, Mr. Liebowitz acknowledged receipt.

24. My communications with Mr. Liebowitz and Mr. Freeman on August 3, 2020 were the last communications concerning discovery, motions, or any other substantive matter concerning this case. I was never told by Mr. Liebowitz or anyone else at LLF that Adlife failed to produce discovery in this case. I have searched my email and found no such notification from Mr. Liebowitz or anyone else at LLF that Adlife failed to produce discovery to Karns. Mr. Liebowitz and LLF had all Adlife's documents concerning the images at issue in this case and Adlife's copyright registrations before this case was filed. Mr. Liebowitz and LLF had all the information and documents concerning Adlife's subscription fees and terms of service at the latest on February 25, 2020 when I sent Mr. Freeman Adlife's Terms of Use. Whenever Mr. Liebowitz or Mr. Freeman requested documents or information from Adlife we provided whatever we possessed immediately. If anyone at LLF had requested more or different information or documents from us we would have provided those immediately. I never had any reason to believe that Mr. Liebowitz, Mr. Freeman, or LLF were not managing the case or the discovery, until November 13, 2020, and it was only on November 13, 2020 that I became concerned that Mr. Liebowitz had failed to produce Adlife's discovery in this case.

25. The very first time I was informed anything approaching the true facts concerning what transpired in this case by Mr. Leibowitz was on November 15, 2020 in the email attached hereto as Exhibit 14 that Mr. Liebowitz sent to Joel Albrizio with a copy to me and Doug Fleurant. The email states:

9

> Hi Joel,
>
> On the case against Karns, months ago they did a SJ on the issue that we did not provide proof of actual damages, but we are going for statutory damages, so you do not need to prove actual damages for a statutory damages case. So their motion will likely not succeed and even if it does you still have the $750-$150,000 for statutory for willful infringement. Our response was put on pause, as I needed to get a local lawyer in Harrisburg which took some time to get. The judge did not set a time limit on when to get a local lawyer in Harrisburg. I thought the parties would do a meditation before having to get a local lawyer in Harrisburg, PA. Instead of trying to in good faith do a mediation they did a motion for lack of prosecution, which has almost no shot of winning as the court never set a time limit to get a local lawyer. In any event, I got a local lawyer late last week to come in and we responded to them and told the judge to require the other side to participate in a mediation. The judge is likely going to set a status conference in the upcoming few weeks to talk about mediation and to talk about new discovery deadlines. Karns never produced any documents in the case so we have a strong argument that they have not engaged in good faith. The case is taking its course. Let me know if you want to jump on the phone to discuss more.
> Thank you.
>
> Best,
> Richard Liebowitz
> Liebowitz Law Firm, PLLC
> 516-233-1660
> www.LiebowitzLawFirm.com

26. The email above was my first notice from anyone at LLF that: a) a motion for lack of prosecution was filed in this case; b) that discovery deadlines had not been complied with in this case, or c) that a motion for summary judgment was filed in this case.

27. In the Court's decision at page 9 of Doc. 59 the Court states that Adlife "must have become aware of its counsel's egregious history of his conduct after being served with the sanction Opinion and Order of June 26, 2020 from the Southern District of New York." I was not aware of the history of Mr. Liebowitz's egregious conduct until I began to do my own research on him in November of 2020 as I have explained above.

10

28. The Court's February 23, 2021 Memorandum references several other Adlife cases that were also mentioned in footnote 10 of the *Buckingham Bros*. decision. I know that *Adlife Mktg. & Communications Co., Inc. v. Yoder's Meats, Inc*., No. 20-CV-1313 (E.D. Pa. June 9, 2020) was settled in June of 2020. I know that *Adlife v. Musser's*, No. 1:19-cv-1828, was settled in July of 2020. *Adlife Mktg. & Communications Co., Inc. v. Tops Markets, LLC*, No. 18-CV-1102 (N.D.N.Y.) was settled in March of 2019 when a marketing company knows as Pure Red came forward, indicated that it was the source of the images used by Tops Markets and several other grocery chains, took responsibility for the infringement, and promptly settled with Adlife on behalf of Top's Market and other infringers. *Adlife Mktg. & Communications Co., Inc. v. Wal-Mart.com USA, LLC*, No. 18-CV-3175[4], District of Colorado, was settled in March of 2019. According to what Mr. Liebowitz told Adlife, *Adlife Mktg. & Communications Co., Inc. v. Acme Markets, Inc*., No. 19-CV-7394 (S.D.N.Y.) was dismissed because Mr. Liebowitz sued the wrong "Acme Markets." I accepted Mr. Liebowitz's explanation since "Acme" is a common corporate name.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 11, 2021 at Lincoln, Rhode Island.

Rebecca M. Jones

---

[4] The decision in Buckingham Bros. contains a typographical error. The correct case number for *Adlife Mktg. & Communications Co., Inc. v. Wal-Mart.com USA, LLC*, is No. 1**8**-CV-3175.