**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2074
_____

ADLIFE MARKETING & COMMUNICATIONS COMPANY, INC.,
Appellant

v.

KARNS PRIME AND FANCY FOOD, LTD;
AD POST GRAPHICS MEDIA MARKETING, INC.

v.

FRY COMMUNICATIONS, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1:19-CV-01638)
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 15, 2022
_____

Before: HARDIMAN, RESTREPO, and PORTER, *Circuit Judges*.
(Filed: January 13, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**RESTREPO**, *Circuit Judge*.

Appellant Adlife Marketing & Communications Company, Inc. challenges the District Court's dismissal of its copyright infringement action against Appellee Karns Prime & Fancy Food, Ltd. for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). For the reasons that follow, we will affirm the District Court's dismissal of the case and its denial of Adlife's motion for reconsideration.

**I.**

We presume the parties' familiarity with the case and set out only the facts needed for the discussion below. Adlife Marketing & Communications Company, Inc. ("Adlife") is an advertising agency that services wholesale and retail food sales customers, through which it has amassed a large library of photographs of fresh and prepared foods. According to Adlife, these images are frequently the subject of online infringement, such that it has on staff a full-time paralegal charged with monitoring its many infringement actions. Between 2016 and 2021, Adlife retained Attorney Richard P. Liebowitz ("Liebowitz") and his firm, Liebowitz Law Firm, PLLC, ("LLF") to pursue infringement claims in over 40 cases, including this one.

**Adlife & Liebowitz's Relationship.** Liebowitz's reputation for sanctionable conduct before tribunals around the country is well documented.[1] We will not dwell on it

---

[1] The Southern District of New York compiled Liebowitz's prolific litigation record into a lengthy appendix in 2020. *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *22 (S.D.N.Y. June 26, 2020). There have been additional decisions condemning his behavior in the years since, most notably, *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 272 (2d Cir. 2021).

beyond noting that his deeply problematic tactics and business model are a clear outgrowth of a copyright system that too often leaves creators little recourse when their work is infringed.

Regardless, Adlife repeatedly chose Liebowitz as their advocate. In 2020, a court noted "Adlife's continued use of an attorney who has little respect or knowledge of local procedures, violates court orders, lies under oath, and is continuously sanctioned for frivolous lawsuits," citing cases where Liebowitz represented Adlife dating back to 2018. *Adlife Mktg. & Communs. Co. v. Buckingham Bros., LLC*, No. 5:19-CV-0796, 2020 WL 4795287, at *26 n.10 (N.D.N.Y. Aug. 18, 2020) (discussing instances where Liebowitz, representing Adlife, was accused of copyright trolling, failing to properly serve process, register with court, and document a settlement, as well as his pattern of voluntarily dismissing actions once clear that Adlife's case lacked merit).[2]

**The Instant Copyright Litigation.** On September 23, 2019, Adlife through Liebowitz filed suit against supermarket chain Karns, for allegedly infringing on 36 of Adlife's images in mailing advertisements.[3] There were problems from the start. Liebowitz was not licensed to practice in the Middle District of Pennsylvania, and despite

---

[2] This relationship extended beyond LLF's mere representation of Adlife; Liebowitz also used the CEO of Adlife, Joel Albrizio, as an expert witness in another of LLF's actions— a case which also notably ended in sanctions being levied against Liebowitz. *Bechler v. MVP Grp. Int'l, Inc.*, No. 16 8837, 2021 WL 848024, at *1 n.3 (S.D.N.Y. Mar. 5, 2021).

[3] Karns notes that they had hired Fry Communications ("Fry") to assist with the advertising, and that Fry provided the images of food products used in the mailings. Adlife did not sue Fry, only Karns. In February 2020, Karns filed a third-party joinder complaint against Fry in the instant action.

3

being notified that he would need to apply for special admission upon filing the Complaint, he failed to do so. Adlife then failed to produce any, even the most basic discovery—including copyright applications or registrations for the allegedly infringed photos—until 12:01 a.m. the day after the close of fact discovery, August 4, 2020.

Karns moved for summary judgment on August 19, 2020. On August 24, the Court held a post-discovery status conference, during which it stayed the proceedings indefinitely, pending entry of an appearance by qualified counsel for Adlife. The case had been stayed for two months when Karns sought involuntary dismissal under Fed. R. Civ. P. 41(b), and LLF finally filed a petition for special admission alongside new local counsel, as well as its opposition to Karns' motion to dismiss, on November 12, 2020.

On November 15, 2020, Liebowitz emailed Adlife's CEO, Joel Albrizio, alerting him to Karns' motion to dismiss, but opining that it was unlikely to succeed because the Court had never set a date by which LLF had to secure local counsel. Adlife claims this was their first indication that there were issues with the case. Adlife subsequently terminated Liebowitz and LLF, and hired current counsel, SRipLAW.

On November 24, Adlife's current counsel entered an appearance, and the Court lifted its stay, finding that Adlife had finally secured qualified counsel. Current counsel subsequently sought to file a supplemental response to Karns' motion to dismiss but failed to timely file a brief in support of that motion, and the Court deemed it withdrawn under M.D. Pa. L.R. 7.5. On February 23, 2021, the District Court granted Karns' motion to dismiss, with prejudice.

4

**Adlife's Motion to Reconsider & Claims of Ignorance.** Adlife then unsuccessfully moved to reconsider, filing several declarations disclaiming any awareness of Liebowitz's antics until November 2020. Adlife pled ignorance, despite that on July 27, 2020, Liebowitz was ordered to serve a sanction order incurred against him in *Usherson v. Bandshell Artist Mgmt.*—another case where Liebowitz represented a client against copyright infringement—on all of LLF's current clients within 30 days and file it on the record in each of LLF's cases. No. 19-CV-6368 (JMF), 2020 WL 3483661, at *22 (S.D.N.Y. June 26, 2020). Liebowitz filed the sanction order on the docket in this case, but Adlife claimed on reconsideration that Liebowitz never directly served the order on them, and they did not know about it. Even more damning, however, in mid-August 2020, another of Adlife's attorneys forwarded to Albrizio an article detailing Liebowitz's misconduct in another case where he was representing them, *Adlife v. Buckingham Bros., LLC*, which resulted in a $1,000 fine for Liebowitz. 2020 WL 4795287, at *11. Albrizio emailed Liebowitz to ask about the decision, and according to a declaration filed along with Adlife's motion for reconsideration, was apparently satisfied with Liebowitz's explanation: that the judge was corrupt. The District Court denied the motion for reconsideration, and Adlife timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). We have jurisdiction under 28 U.S.C. § 1291. We review challenges to both involuntary dismissal, *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 132 (3d Cir. 2019), and a district court's denial of reconsideration, *Jang v. Bos. Sci. Scimed, Inc.*, 729 F.3d 357, 367 (3d

Cir. 2013), for abuse of discretion. There is no "magic formula" for discerning whether a District Court abused its discretion in granting a motion for involuntary dismissal. *Hildebrand*, 923 F.3d at 132 (citation omitted). That said, the decision to dismiss "must be given great deference by this Court—a court which has had no direct contact with the litigants and whose orders, calendar, docket and authority have not been violated or disrupted." *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

## III.

Appellants assert that the District Court abused its discretion when it (1) dismissed Adlife's case for failure to prosecute without notice or a hearing, and (2) subsequently denied Adlife's motion to reconsider. We review these claims in turn.

### A. Dismissal for Failure to Prosecute under Rule 41

This Court evaluates Fed. R. Civ. P. 41 involuntary dismissal with prejudice under a six-factor test, set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). These factors are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of the claim or defense. *Id*. No single factor is dispositive, nor need all factors be satisfied to warrant dismissal. *Hildebrand*, 923 F.3d at 132. While dismissal with prejudice is an "extreme" sanction, *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam), it is one "rightfully in the district courts' toolbox," *Hildebrand*, 923 F.3d at 132, and this Court "has not

6

hesitated to affirm the district court's imposition of sanctions, including dismissals in appropriate cases." *Poulis*, 747 F.2d at 867 n.1. Below, the District Court found that all of the *Poulis* factors favored dismissal except for the sixth—meritoriousness of the claim—which it concluded was neutral. We agree.

As to the first *Poulis* factor, Adlife argues on appeal that they were entitled to notice and a hearing to show that they were ignorant of Liebowitz's misconduct, under *Dunbar v. Triangle Lumber & Supply Co.*, 816 F.2d 126, 129 (3d Cir. 1987) (remanding for notice and hearing, as district court made no finding with record support that party facing dismissal bore some responsibility for actions of her counsel). However, *Dunbar* proceedings are not required "[w]here a client had or should have had independent knowledge of the delinquency that was the grounds for dismissal." *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 870 (3d Cir. 1994). Given the depth of Adlife's relationship with Liebowitz over dozens of cases they litigated together, and that Adlife retains a full-time paralegal to monitor their cases, it is inconceivable that Adlife was "in the dark" about Liebowitz's reputation until November 2020. Appellants' Br. at 6–14. This claim is especially incredible given that Adlife conceded notice in August 2020 of the *Buckingham Bros.* decision through an online article. Both the decision and the article described Liebowitz's history of malfeasance—and in particular his deceitfulness—in sufficient detail that it would be unreasonable to shrug off, without further inquiry, as judicial corruption alone. 2020 WL 4795287, at *9 n.7 (noting Liebowitz's demonstrated "lack of credibility through a variety of types of misconduct

beyond what he exhibits in this case" and discussing egregious examples, including the *Usherson* decision, of which Adlife also disclaimed notice).

Notice and a hearing are also unnecessary where the party files an opposition to the motion to dismiss, as was the case here. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 247 (3d Cir. 2013). Adlife counters that their new counsel was unfairly prevented from supplementing their opposition, through which they sought to further distance themselves from Liebowitz. However, any such supplement would have been futile, as the District Court fairly concluded that dismissal would have been appropriate without finding Adlife responsible for the issues with the case.[4] The Court did not abuse its discretion in handling the first *Poulis* factor.

On the second factor, prejudice, we agree that Liebowitz's distracting antics and delays throughout the case (beyond simply missing the close of discovery by one minute) impeded Karns' ability to prepare a full and complete defense, and this factor favors dismissal. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003) (affirming district court's finding that "while 'prejudice' for the purpose of *Poulis* analysis does not

---

[4] As such, we need not consider Adlife's argument that they should have been exempt from the Middle District of Pennsylvania's local rules when they failed to timely file a brief along with their motion to supplement their response to Karns' motion to dismiss and the District Court accordingly considered their motion withdrawn under M.D. Pa. L.R. 7.5. We will note, however, that this case is distinct from *Cohen v. Bd. of Trs. of the Univ. of the D.C.* in that Adlife's withdrawn motion was not their sole response to a dispositive motion, under which strict application of the local rule could conceivably conflict with the Federal Rules, for example, by altering the burden of persuasion. 819 F.3d 476, 481 (D.C. Cir. 2016). Here, Adlife had already unsuccessfully responded to Karns' motion to dismiss. Adlife then failed to properly request a second bite at the apple, and the District Court did not err in applying its local rules to reject that request.

mean 'irremediable harm,' the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial").

As to *Poulis* factors three through five—history of dilatoriness, bad faith, and the effectiveness of other sanctions—Adlife primarily asserts on appeal that the District Court wrongly blamed them instead of Liebowitz. However, the *Poulis* test already accounts for a party's personal responsibility with its first factor; Appellants' reasoning would cause the first factor to improperly override the other five factors of the test. *Poulis*, 747 F.2d at 868 (finding party's lack of responsibility for counsel's conduct not dispositive to involuntary dismissal and reviewing other factors).

Further, although Adlife argues that this is not the most extreme case of abuse when viewed in a vacuum, it is appropriate for courts to consider the broader context of a party or attorney's conduct in other cases when deciding on a particular sanction. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1179 n.15 (3d Cir. 1993) (weighing counsel's "improper conduct" in other cases when deciding whether to sanction him); *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 197 (3d Cir. 1988) (citing other considerations when awarding sanctions, such as "the public interest in encouraging particular suits" or "the attorney's history of filing frivolous actions or alternatively, his or her good reputation"); *accord Doyle v. Murray*, 938 F.2d 33, 35 (4th Cir. 1991) (explaining that, in contemplating sanctions, consideration of counsel's actions in prior cases may be appropriate to "hold clients to some measure of responsibility both for selecting competent attorneys and, more important, for supervising their conduct"); *Dawson v. Lennon*, 797 F.2d 934, 936 (11th Cir. 1986) ("The clear pattern of attempts to

9

deceive the courts . . . in this and other cases justifies the district court's imposition of the severe sanction of dismissal with prejudice."); *Johnson v. Comm'r*, 289 F.3d 452, 456–57 (7th Cir. 2002) ("The Tax Court was not required to ignore Izen's bad conduct in other cases; indeed it would have been remiss not to consider it.").

From this perspective, beyond his failure to seek admission and discovery delays, Liebowitz's overall history of dilatoriness, his repeated exercises of bad faith, and the clear ineffectiveness of alternative sanctions in prior actions—even looking only to cases where he represented Adlife—further supports the District Court's decision to find these factors favored dismissal. With five of the six *Poulis* factors clearly weighing in Karns' favor,[5] the District Court did not abuse its discretion in dismissing Adlife's case with prejudice.

## B. Denial of Adlife's Motion to Reconsider

A motion for reconsideration may be granted where a party can show "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Adlife asserts that the District Court's refusal to entertain their motion for reconsideration was an abuse of discretion based on the third prong. On appeal, they restate their claims that they were innocent victims of Liebowitz's grift and assert that the District Court should have

---

[5] We also see no error in the District Court's determination that the sixth factor—meritoriousness of the claims—was neutral, given that Adlife's pleadings provided no information about losses or when the allegedly infringed images were registered, and the Court could therefore not make a determination either way.

considered "Adlife's plea through [their] new lawyers after Liebowitz was terminated." Appellants' Br. at 45.

However, as the District Court explained in denying Adlife's request for reconsideration, "the declarations and arguments presented in support of [Adlife's reconsideration] motion could have been raised prior to the entry of judgment in this action," and noted that Adlife's new counsel indeed "sought leave to file a supplemental brief in opposition to Defendant's motion to dismiss presenting similar arguments but failed to comply with the local rules of this Court with respect to that filing." JA22; *see also Drysdale v. Woerth*, 153 F. Supp. 2d 678, 683 (E.D. Pa. 2001), aff'd, 53 F. App'x 226 (3d Cir. 2002) (refusing on motion for reconsideration to "rethink through facts [] already thoroughly considered" or "sift through new evidence that, although in existence at the time of trial, was never admitted"). Further, we reiterate our agreement with the District Court that dismissal would have been warranted under *Poulis* even if Adlife were found not responsible for Liebowitz's conduct. We find no abuse of discretion in the District Court's denial of reconsideration.

## IV.

For the foregoing reasons, we will affirm the judgments of the District Court.